Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*King Spider LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KING SPIDER LLC,<br><br>*Plaintiff*<br><br>v.<br><br>1692 THEY MISSED ONE SWEATSHIRT, AMIBLVOWA 7-13 DAYS SHIPPING, BATUFARY, BELLINYA, DANGHONGBURANG, GAOYUANZHI, GUANGZHOUYIZUSHANGMAOYOUXIANGONGSI, HAPPYNARAN, HUANGCHACHASHANGHANG, IN.JOY, KOSUSANILL, KUNMINGKOUTIAOSHANGMAOYOUXIANGONGSI, LENERNYG, LIUQINGRONG DIANZI, MEIWEILEYA ONLINE, NOVELTY APPAREL, ONERED, ORZMIC, WOLF CLOTHING STORE, XIAXAIXU, XIONG\*STORE, YQWEL, ZENMANCHEN, ZSIIBO DIRECT and 富润发 A/K/A FU RUNFA,<br><br>*Defendants* | **CIVIL ACTION No.**<br><br><br>**COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

**GLOSSARY**

| Term | Definition |
|------|------------|
| **Plaintiff or King Spider** | King Spider LLC |
| **Defendants** | 1692 They Missed One Sweatshirt, Amiblvowa 7-13 Days Shipping, Batufary, BelLinya, DangHongBuRang, GaoYuanZhi, Guangzhouyizushangmaoyouxiangongsi, Happynaran, huangchachashanghang, IN.JOY, Kosusanill, kunmingkoutiaoshangmaoyouxiangongsi, Lenernyg, LiuQingRong DianZi, Meiweileya Online, Novelty Apparel, OneRed, orzmic, Wolf clothing store, XIAXAIXU, Xiong*Store, YQWEL, ZENMANCHEN, ZSIIBO Direct and 富润发 a/k/a Fu Runfa |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Rucker Dec.** | Declaration of CB Rucker in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Sp5der Products** | A young, successful high-end lifestyle streetwear line founded by American rapper, Young Thug, specializing in men's and women's apparel, accessories, bags and other ready-made goods |
| **Sp5der Registrations** | U.S. Trademark Registration Nos.: 7,151,224 for "SP5WOM" for a variety of goods in Class 25; 7,166,293 for "555 555" for a variety of goods in Class 25, 6,512,199 for "SP5DER" for a variety of goods in Class 25; 6,681,320 " " for a |

| | |
|---|---|
| | variety of goods in Class 25; 6,688,472 for " " for a variety of goods in Class 25; 7,031,211 for " " for a variety of goods in Class 25; 7,270,084 for " " a variety of goods in class 25; and 7,049,772 " " for a variety of goods in Class 25 |
| **Sp5der Applications** | U.S. Application Nos.: 97/141,401 for "555 555" for a variety of goods in Classes 9, 25 and 41; 97/141,377 "SP5DER" for a variety of goods in Classes 9, 35 and 41; 88/490,200 "KING SPIDER" for a variety of goods in Class 25; 88/779,551 for "SP5 WORLDWIDE" for a variety of goods in Class 25; 90/298,790 "SP5" for a variety of goods in Class 25; 97/141,407 " " for a variety of goods in Classes 9 and 41; 90/183,203 " " for a variety of goods in Class 25; 97/141,391 " " for a variety of goods in Classes 9 and 41;; 90/183,210 " " for a variety of goods in Class 25; and 97/141,416 " " for a variety of goods in Classes 9 and 41 |
| **Sp5der Marks** | The marks covered by the Sp5der Registrations and Sp5der Applications |
| **Counterfeit Products** | Products bearing or used in connection with the Sp5der Marks, and/or products in packaging and/or containing labels bearing the Sp5der Marks, and/or bearing or used in connection with marks that are confusingly similar to the Sp5der Marks and/or products that are identical or confusingly similar to the Sp5der Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |

| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
|---|---|
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Amazon, such as Amazon.com, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, promote, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff, a limited liability company organized and existing under the laws of the State of New York, alleges as follows:[1]

## NATURE OF THE ACTION

1.    This action (the "Action") involves claims for trademark infringement of Plaintiff's federally registered Sp5der Marks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered Sp5der Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d); trademark infringement of Plaintiff's unregistered Sp5der Marks in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims, arising from the infringement of the Sp5der Marks, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Sp5der Products by Defendants.

## JURISDICTION AND VENUE

2.    This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.    Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.    Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.    Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market,

promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.      Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

d.      Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

e.      Upon information and belief, Defendants are aware of Plaintiff, its Sp5der Products and Sp5der Marks, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.      Plaintiff Sp5der is a limited liability company organized and existing under the laws of the State of New York, with an address 1000 Park Avenue, Apartment A8, New York, New York 10028.

6.      Upon information and belief, Defendants are merchants on the Amazon.com online marketplace platform, which, upon information and belief, is owned by Amazon.com, Inc., a Delaware corporation with a principal place of business at 410 Terry Avenue North, Seattle, WA 98109, through which Defendants offer for sale and/or sell Counterfeit Products. Defendants principal place of business is located at the address identified, if any, in the

screenshots of Defendants' Merchant Storefronts in **Exhibit C**.

## GENERAL ALLEGATIONS
### Plaintiff and Its Well-Known Sp5der Products

7.        Sp5der, launched by Plaintiff in or about 2019, is a successful and high-end lifestyle streetwear line of men's and women's apparel, accessories, bags and other ready-made goods which are distributed in the United States and abroad ("Sp5der Brand"). Images of the Sp5der Products are attached hereto as **Exhibit A** and incorporated herein by reference.

8.        The Sp5der Products are marketed under the Sp5der Marks. The Sp5der Brand is recognized for its familiar motifs, including rhinestones and spider webs, as well as its eccentric design language.

9.        The Sp5der Products are sold exclusively direct to consumers via King Spider's official website, https://kingspider.co.

10.       The Sp5der Products are only sold in periodic quantity-limited releases in which the Sp5der Products are not restocked once they sell out and in each quantity-limited release the supply of Sp5der Products made is intentionally low (hereinafter, "Drop(s)").

11.       Since the launch, the Sp5der Brand and Sp5der Products have been featured in numerous press publications, including, but not limited to, *Complex*, *Highsnobriety*, *Hot New HipHop* and *Hypebeast*, among others.

12.       Sp5der Products typically retail for between $25.00 - $1,000.00.

13.       While Sp5der has gained significant common law trademark and other rights in its Sp5der Marks and Sp5der Products through use, advertising and promotion, Sp5der also protected its valuable rights by filing for and obtaining federal trademark registrations.

14.       For example, King Spider owns the following U.S. Trademark Registration Nos.:7,151,224 for "SP5WOM" for a variety of goods in Class 25; 7,166,293 for "555 555" for

a variety of goods in Class 25, 6,512,199 for "SP5DER" for a variety of goods in Class 25;

6,681,320 " *sp5der* " for a variety of goods in Class 25; 6,688,472 for " *p★nk!* "

for a variety of goods in Class 25; 7,031,211 for " *555 555* " for a variety of goods in Class

25; 7,270,084 for " **SP5WOM** " a variety of goods in class 25; and 7,049,772 "

**SPÄDER** " for a variety of goods in Class 25. King Spider has also applied for the

registration of U.S. Application Nos.: 97/141,401 for "555 555" for a variety of goods in Classes

9, 25 and 41; 97/141,377 "SP5DER" for a variety of goods in Classes 9, 35 and 41; 88/490,200

"KING SPIDER" for a variety of goods in Class 25; 88/779,551 for "SP5 WORLDWIDE" for a

variety of goods in Class 25; 90/298,790 "SP5" for a variety of goods in Class 25; 97/141,407 "

*555 555* " for a variety of goods in Classes 9 and 41; 90/183,203 " **5** " for a variety of

goods in Class 25; 97/141,391 " *sp5der* " for a variety of goods in Classes 9 and 41;

90/183,210 " ** " for a variety of goods in Class 25; and 97/141,416 "

*p★nk!* " for a variety of goods in Classes 9 and 41. True and correct copies of

the registrations and applications for the Sp5der Marks are attached hereto as **Exhibit B** and

incorporated herein by reference.

15.    The Sp5der Marks are currently in use in commerce in connection with the Sp5der

Products.  The Sp5der Marks were first used in commerce on or before the dates of first use as reflected in the respective registrations attached hereto as **Exhibit B**.

16.     The success of the Sp5der Products is due in part to King Spider's marketing and promotional efforts. These efforts include advertising and promotion through social media, King Spider's website (available at https://kingspider.co) and print and internet-based advertising.

17.     King Spider's success is also due to its use of the highest quality materials and processes in making the Sp5der Products.

18.     Additionally, King Spider owes a substantial amount of the success of the Sp5der Products to its consumers and word-of-mouth buzz that its consumers have generated.

19.     King Spider's efforts, the quality of King Spider's products and the word-of-mouth buzz generated by its consumers have made the Sp5der Marks and Sp5der Products prominently placed in the minds of the public. Members of the public and retailers have become familiar with the Sp5der Marks and Sp5der Products and have come to associate them exclusively with Sp5der. King Spider has acquired a valuable reputation and goodwill among the public as a result of such associations.

20.     King Spider has gone to great lengths to protect its interests in the Sp5der Products and the Sp5der Marks.  No one other than King Spider and its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Sp5der Marks, or use the Sp5der Marks in connection with goods or services or otherwise, without the express permission of King Spider.

<u>**Amazon and Defendants' User Accounts**</u>

21.     Amazon is an online marketplace and e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer

for sale, sell and ship their retail products originating primarily from China,[2] among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

22.     Amazon is recognized as one of the leaders of the worldwide e-commerce and digital retail market and the company's net sales were $169.9 billion in the fourth quarter of 2023.[3] Sales to the U.S. make up a significant percentage of the business done on Amazon.[4] As of September 27, 2023, Amazon had a market capital of $1.84 trillion, making it the fourth most valuable company in the U.S.[5]

23.     Many of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Amazon, like Defendants, are located in China, who recently accounted for nearly half of all businesses on Amazon.[6]

24.     In Q4 of 2023, third party merchants generated $43.56 billion, accounting for 61% of Amazon's sales.[7]

25.     Amazon aggressively uses the Internet and television, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S.  In 2023 alone, Amazon spent $44.4 billion on marketing, up from $42.3

---

[2] *See* Juozas Kaziukenas, *Chinese Sellers Are Building Brands on Amazon,* MARKETPLACE PULSE (Dec. 6, 2018), https://www.marketplacepulse.com/articles/chinese-sellers-are-building-brands-on-amazon.

[3] *Amazon's Record Earnings in 2023 Propelled by Strong Fourth-Quarter Results,* MSN (Mar. 8, 2024), www.msn.com/en-us/money/companies/amazon-s-record-earnings-in-2023-propelled-by-strong-fourth-quarter-results/ar-BB1ijMBv

[4] See Amazon.com, Inc., Quarterly Results Q4 Earnings (Form 10-K) (Feb. 1, 2024).

[5] STOCK ANALYSIS (last visited Mar. 8, 2024), https://stockanalysis.com/stocks/amzn/market-cap/.

[6] John Herrman, *The Junkification of Amazon Why does it feel like the company is making itself worse?*, NEW YORK MAGAZINE (Jan. 30, 2023), https://nymag.com/intelligencer/2023/01/why-does-it-feel-like-amazon-is-making-itself-worse.html.

[7] Daniela Coppola, *Quarterly value of Amazon third-party seller services 2017-2023,* STATISTA (Feb 8, 2024), https://www.statista.com/statistics/1240236/amazon-third-party-seller-services-value/#:~:text=Amazon%27s%20net%20sales%20generated%20through%20its%20third-party%20seller,fees%20and%20other%20services%20related%20to%20third-party%20sellers, Daniela Coppola, Share of paid units sold by third-party sellers on Amazon platform from 2nd quarter 2007 to 4th quarter 2023, STATISTA (Feb 8, 2024), https://www.statista.com/statistics/259782/third-party-seller-share-of-amazon-platform/.

billion the previous year.[8]

26.     As reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Amazon,[9] and as recently addressed in news reports, an astronomical number of counterfeit and infringing products are offered for sale and sold on Amazon at a rampant rate.[10]

27.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Amazon as well as potentially yet undiscovered additional online marketplace platforms.

28.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

29.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

30.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

---

[8]Daniela Coppola, *Worldwide Amazon marketing expenditure 2010-2023,* STATISTA (Feb. 8, 2024), https://www.statista.com/statistics/506535/amazon-marketing-spending/#:~:text=In%20the%20fiscal%20year%202023%2C%20Amazon%E2%80%99s%20marketing%20spending,42.3%20billion%20U.S.%20dollars%20in%20the%20previous%20year.
[9] *See, e.g., Apple Inc. v. Mobile Star LLC,* No. C17-1120 RAJ (W.D. Cal. Aug. 4, 2017) and *Diamler AG v. Amazon.com, Inc.*, 16-cv-00518-RSM (W.D. Wash. Mar. 11, 2019).
[10] Brittney Myers, *Some Shoppers Are Fleeing Amazon Because of Counterfeit Goods*, THE ASCENT (Jan. 17, 2023), https://www.fool.com/the-ascent/personal-finance/articles/some-shoppers-are-fleeing-amazon-because-of-counterfeit-goods/; *see* Brendan Case, *Amazon, Third-Party Sellers Spur Fake Goods, Group Says*, BLOOMBERG (Oct. 13, 2021), https://www.bloomberg.com/news/articles/2021-10-13/amazon-third-party-sellers-spur-counterfeit-boom-group-says#xj4y7vzkg.

**Defendants' Wrongful and Infringing Conduct**

31.     Particularly in light of Plaintiff's success with its Sp5der Products, as well as the reputation they have gained, Plaintiff and its Sp5der Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Sp5der Products and Sp5der Marks and Plaintiff investigates and enforces against such activities.

32.     Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts. Screenshots of Infringing Listings from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference.

33.     Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Sp5der Products or to use the Sp5der Marks, or any marks that are confusingly similar to the Sp5der Marks.

34.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Sp5der Products, only with minor variations that no ordinary consumer would recognize.

35.     During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Defendants'

Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit C**.

36.    Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York. Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit C**.

37.    For example, below on the left is an image of one of Plaintiff's Sp5der Products. Depicted further below is a listing for Defendant DangHongBuRang Store's Counterfeit Product ("DangHongBuRang Store Infringing Listing" and "DangHongBuRang Store Counterfeit Product," respectively). The DangHongBuRang Store Infringing Listing appears on Defendant DangHongBuRang Store's Merchant Storefront, https://www.amazon.com/s?me=A3UQ9D7M8LHMNV, and offers the DangHongBuRang Store Counterfeit Product for $24.99 per item, using, featuring and/or incorporating the Sp5der Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing. Further, the DangHongBuRang Store Counterfeit Product is virtually identical to one of Plaintiff's Sp5der Products and features and/or incorporates the Sp5der Marks. There is no question that the DangHongBuRang Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Sp5der Products or that the DangHongBuRang Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the

unauthorized use of the Sp5der Marks:

**Sp5der Product**                                        **Defendant's Counterfeit Product**

                                        

38.     By way of another example, below on the left is an image of one of Plaintiff's Sp5der Products.  Depicted further below is a listing for Defendant Meiweileya Online Store's Counterfeit Product ("Meiweileya Online Store Infringing Listing" and "Meiweileya Online Store Counterfeit Product," respectively).   The Meiweileya Online Store Infringing Listing appears        on        Defendant's        Merchant        Storefront, https://www.amazon.com/s?me=A2T3O3MY9QSEV0,  and  offers  the  Meiweileya  Online Store Counterfeit Product for $26.99 per item, using, featuring and/or incorporating the Sp5der Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing.  Further, the Meiweileya Online Store Counterfeit Product is virtually identical to one of Plaintiff's Sp5der Products and features and/or incorporates the Sp5der Marks.  There is no question that the Meiweileya Online Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Sp5der Products or that the Meiweileya Online Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the

11

unauthorized use of the Sp5der Marks:

**Sp5der Product**                              **Defendant's Counterfeit Product**

          

39.     As another example, below on the left is an image of one of Plaintiff's Sp5der Products. Depicted further below is a listing for Defendant XIAXAIXU Store's Counterfeit Product ("XIAXAIXU Store Infringing Listing" and "XIAXAIXU Store Counterfeit Product," respectively). The XIAXAIXU Infringing Listing appears on Defendant XIAXAIXU Store Merchant Storefront, https://www.amazon.com/s?me=A1QMFZ02AF3ZUF, and offers the XIAXAIXU Store Counterfeit Product for $19.80 per item, using, featuring and/or incorporating the Sp5der Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing. Further, the XIAXAIXU Store Counterfeit Product is virtually identical to one of Plaintiff's Sp5der Products and features and/or incorporates the Sp5der Marks. There is no question that XIAXAIXU Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Sp5der Products or that the XIAXAIXU Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Sp5der Marks:

**Sp5der Product**

**Defendant's Counterfeit Product**




40.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Sp5der Marks, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Sp5der Marks in order to confuse consumers into believing that such Counterfeit Products are the Sp5der Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Sp5der Marks, after Plaintiff obtained federal registrations in the Sp5der Marks, as alleged above, and after Plaintiff's Sp5der Products and Sp5der Marks became well-known to the purchasing public.

41.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Sp5der Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Sp5der Products, and in bad faith adopted the Sp5der Marks.

42.     Defendants have been engaging in the illegal counterfeiting and infringing actions,

13

as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, its Sp5der Marks and Sp5der Products.

43.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

44.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Sp5der Marks, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

45.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

46.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

47.     Plaintiff is the exclusive owner of all right and title to the Sp5der Marks.

48.     Plaintiff has continuously used the Sp5der Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

49.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-

known and prior rights in its Sp5der Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Sp5der Marks and/or used spurious designations that are identical with, or indistinguishable from, the Sp5der Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

50.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Sp5der Marks through their participation in such activities.

51.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Sp5der Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

52.     Defendants' unauthorized use of the Sp5der Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized

or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Sp5der Marks.

53.     Defendants' actions constitute willful counterfeiting of the Sp5der Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

54.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Sp5der Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Sp5der Marks.

55.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[15 U.S.C. § 1114/Lanham Act § 32(a)]**

56.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

57.     Plaintiff has continuously used the Sp5der Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

58.     Plaintiff, as owner of all right, title and interest in and to the Sp5der Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

59.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Sp5der Marks.

60.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Sp5der Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Sp5der Products and/or related products bearing the Sp5der Marks into the stream of commerce.

61.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Sp5der Marks and/or which are identical or confusingly similar to the Sp5der Marks.

62.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Sp5der Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

63.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Sp5der Marks.

64.     Defendants' egregious and intentional use of the Sp5der Marks in commerce on or

in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Sp5der Products or are otherwise associated with, or authorized by, Plaintiff.

65.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Sp5der Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

66.     Defendants' continued, knowing, and intentional use of the Sp5der Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Sp5der Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

67.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Sp5der Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Sp5der Marks.

68.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys'

fees and costs.

## THIRD CAUSE OF ACTION
### (Infringement of Unregistered Trademarks)
### [15 U.S.C. § 1125/Lanham Act § 43(a)]

69.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

70.     Plaintiff has continuously used the Sp5der Marks in interstate commerce since on or before the dates of first use as reflected in the Sp5der Applications attached hereto as Exhibit B.

71.     Plaintiff, as the owner of all right, title and interest in and to the Sp5der Marks and Sp5der Applications, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

72.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the Sp5der Marks.

73.     Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Plaintiff, as the trademark owner of the Sp5der Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Sp5der Products and/or related products bearing the Sp5der Marks into the stream of commerce.

74.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing and/or utilizing marks that are reproductions, copies and/or colorable imitations of the Sp5der Applications and/or which are identical or confusingly similar to the Sp5der Marks.

75.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Sp5der Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

76.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Sp5der Marks.

77.     Defendants' egregious and intentional use of the Sp5der Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Sp5der Products or are otherwise associated with or authorized by Plaintiff.

78.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Sp5der Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

79.     Defendants' continued, knowing and intentional use of the Sp5der Marks without Plaintiff's consent or authorization constitutes intentional infringement of the Sp5der Marks in violation of §43 of the Lanham Act, 15 U.S.C. § 1125.

80.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Sp5der Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it

has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Sp5der Marks.

81.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

82.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

83.     Plaintiff, as the owner of all right, title and interest in and to the Sp5der Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

84.     The Sp5der Marks are inherently distinctive and/or have acquired distinctiveness.

85.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Sp5der Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit

Products are Sp5der Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Sp5der Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

86.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Sp5der Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Sp5der Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Sp5der Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Sp5der Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

87.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Sp5der Marks would cause confusion, mistake or deception among purchasers, users and the public.

88.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive

the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff's Sp5der Products and Sp5der Marks.

89.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Sp5der Products and by depriving Plaintiff of the value of its Sp5der Marks as a commercial asset in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Sp5der Marks.

90.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

91.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

92.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Sp5der Products to induce, and did induce and intend and will continue to induce, customers to purchase their

Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

93.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

94.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

95.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

96.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Sp5der Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Sp5der

Marks as a commercial asset in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

97.     As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.   For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.   In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.   For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered

Sp5der Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.    For an award of damages to be proven at trial for common law unfair competition;

F.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.    manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

      ii.   directly or indirectly infringing in any manner any of Plaintiff's Sp5der Marks;

      iii.  using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Sp5der Marks to identify any goods or services not authorized by Plaintiff;

      iv.   using any of Plaintiff's Sp5der Marks or any other marks that are confusingly similar to the Sp5der Marks, on or in connection with

Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix. from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant

Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.   providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.   instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

G.   For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Sp5der Marks, or bear any marks that are confusingly similar to the Sp5der Marks;

28

H.   For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Sp5der Marks, or bear any marks that are confusingly similar to the Sp5der Marks pursuant to 15 U.S.C. § 1118;

I.   For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.   For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.   For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.   For Plaintiff's reasonable attorneys' fees;

M.   For all costs of suit; and

N.   For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: April 5, 2024                          Respectfully submitted,

                                         EPSTEIN DRANGEL LLP

BY: _____
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:      (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiff*
*King Spider LLC*

30